UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTONIO ISRAEL SOTOSOSA,

                       Plaintiff,

                                                                          Case # 15-CV-854-FPG

v.

                                                                          DECISION AND ORDER

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.
_____

      Antonio Israel Sotososa ("Sotososa" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 9, 14. For the reasons stated below, this Court finds that the Commissioner's decision is not in accordance with the applicable legal standards. Accordingly, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      On January 28, 2013, Sotososa protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 172-77. He alleged that he had been disabled since October 23, 2012, due to depression, social phobia, and panic, anxiety, sleep, and personality disorders. Tr. 172, 187, 190. After his application was denied at the initial administrative level, a hearing

---

[1]     References to "Tr." are to the administrative record in this matter.

was held before Administrative Law Judge Stanley A. Moskal, Jr. ("the ALJ") on September 12, 2014, in which the ALJ considered Sotososa's application *de novo*. Tr. 47-75. Sotososa appeared at the hearing with his attorney and testified. *Id.* Robert Lessne, a vocational expert ("VE"), testified via telephone. Tr. 69-74. On January 30, 2015, the ALJ issued a decision finding that Sotososa was not disabled within the meaning of the Act. Tr. 28-37. On July 31, 2015, that decision became the Commissioner's final decision when the Appeals Council denied Sotososa's request for review. Tr. 1-6. Thereafter, Sotososa commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not this Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.     Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f). The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate

that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Sotososa's claim for benefits under the process described above. At step one, the ALJ found that Sotososa had not engaged in substantial gainful activity since the alleged onset date. Tr. 30. At step two, the ALJ found that Sotososa has the following severe impairments: social phobia and depressive, anxiety, panic, sleep, and personality disorders. Tr. 30-31. At step three, the ALJ found that such impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 31-32.

Next, the ALJ determined that Sotososa retained the RFC to perform a full range of work at all exertional levels but with nonexertional limitations. Tr. 32-37. Specifically, the ALJ found that Sotososa can dress, bathe, and groom himself, cook, clean, shop, and manage his own money. Tr. 32. Sotososa has a driver's license, engages in limited socialization with friends and family, has hobbies, exercises, watches television, listens to the radio, and attends church services. *Id.* The ALJ found that Sotososa can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration, and a regular schedule. *Id.* He can learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. *Id.* The ALJ determined that Sotososa is mildly impaired in performing complex tasks independently due to distractibility. *Id.* Sotososa

is moderately limited in activities of daily living, social functioning, and concentration, persistence, and pace, but he has no extended periods of decompensation. *Id.*

At step four, the ALJ relied on the VE's testimony and found that this RFC allows Sotososa to perform his past relevant work as a dry cleaning shirt presser. Tr. 37. Accordingly, the ALJ concluded that Sotososa was not "disabled" under the Act. *Id.*

## II.    Analysis

Sotososa argues that remand is required because the ALJ failed to properly develop the administrative record. ECF No. 9-1, at 18-22; ECF No. 17, at 1-5. Specifically, Sotososa argues that the record lacked treatment notes from Lakeshore Behavioral Health ("Lakeshore"), where he had been receiving treatment for over one year at the time of the ALJ's decision. *Id.* The Commissioner maintains that the ALJ properly developed the record and that the record contained sufficient evidence for the ALJ to determine that Sotososa was not disabled. ECF No. 13, at 13-19.

The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his or her application. 20 C.F.R. § 404.1512(d). The ALJ must "make every reasonable effort" to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so. *Id.* Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record. *Id.* at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence. *Rosa*, 168 F.3d at 79 n.5.

5

The record contained 14 pages of treatment notes from Lakeshore. Based on the ALJ's decision and the hearing transcript, however, it is apparent that there were other Lakeshore treatment notes missing from the record that created an obvious gap.

Sotososa testified, for instance, that he received counseling at Lakeshore from a therapist named "Ernest." Tr. 56. The ALJ noted in his decision that Sotososa "said he was currently in counseling with Ernest at Lakeshore[.]" Tr. 34; *see also* Tr. 35 ("He sees a counselor and psychiatrist at Lakeshore."). The only item in the record from Ernest, however, is a letter that Sotososa submitted to the Appeals Council that was admitted to the record after the ALJ's decision. Tr. 4, 449. That letter, dated March 4, 2015, indicated that Sotososa had been attending treatment at Lakeshore and seeing Ernest for individual counseling sessions on a biweekly basis since December 2013. Tr. 449. Despite the regularity of Sotososa's counseling sessions with Ernest, there were no treatment notes regarding these sessions in the record.

The March 4, 2015 letter also indicated that Sotososa was "scheduled to see an attendant prescriber every one to three months for medication management [at Lakeshore]." Tr. 449. The record contains two Lakeshore medication sheets (Tr. 367, 369) stamped by Nurse Practitioner Faye Taber ("N.P. Taber"), but the record lacks any other treatment or medication management records from N.P. Taber even though Sotososa apparently saw her several times a year.

Additionally, the ALJ gave "great weight" to consultative psychiatric examiner Susan Santarpia, Ph.D. ("Dr. Santarpia") in part because her opinion was "not inconsistent with the treatment notes of . . . Lakeshore[.]" Tr. 36. This is problematic because the ALJ clearly did not have all of the relevant Lakeshore treatment notes and Dr. Santarpia's opinion was the only RFC assessment of record. Thus, if the ALJ had the additional Lakeshore records before him, it is

possible that he would have afforded less weight to Dr. Santarpia's opinion and reached a different RFC determination.

The Commissioner also argues that Sotososa's counsel should have supplied the ALJ with the missing records. ECF No. 13, at 14. At Sotososa's hearing, the ALJ expressly acknowledged that the record lacked Lakeshore treatment notes. Tr. 74-75. The ALJ stated to Sotososa's counsel: "as far as the present work at Lakeshore, if they've done anything current with him, you might check if there's anything else that can be added to the record." Tr. 74. The ALJ further noted that he would "leave the record open for 30 days." *Id.*

It is well established that the ALJ's affirmative duty to develop the record exists even when the claimant is represented by counsel. *Pratts*, 94 F.3d at 37. Where there is a gap in the record, however, district courts in this circuit have reached conflicting conclusions as to whether the ALJ satisfies that duty by relying on the claimant's counsel to obtain the missing evidence. *Harris v. Colvin*, No. 11-CV-1497, 2013 WL 5278718, at *8 (N.D.N.Y. Sept. 18, 2013); *compare Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."), *and Harris v. Colvin*, No. 11-CV-1497, 2013 WL 5278718, at *8 (N.D.N.Y. Sept. 18, 2013) ("[T]his Court is compelled to conclude that the ALJ's reliance on claimant's counsel to obtain the treating physician's records was inadequate."), *with Rivera v. Comm'r of Soc. Sec.*, 728 F. Supp. 2d 297, 330 (S.D.N.Y. 2010) (finding that the ALJ did not err when he failed to personally obtain certain treatment notes because he gave the plaintiff's counsel three weeks to obtain and submit the records and counsel failed to submit anything or request more time), *and Pagan v. Astrue*, No. 11-CV-825, 2012 WL 2206886, at *8 (N.D.N.Y. June 14, 2012) (finding that the ALJ satisfied

his duty to develop record by granting counsel additional time to obtain evidence). The Second Circuit has indicated that the ALJ may rely on the claimant's counsel to obtain missing evidence under some circumstances, but it has stopped short of holding that the ALJ may delegate his or her duty to the claimant's counsel. *See Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sept. 8, 2005) (summary order); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (summary order). In *Jordan* and *Frye*, the Second Circuit determined that the ALJs satisfied their duty to develop the record because, even though the ALJs relied on counsel to obtain missing evidence, they also took independent steps to complete the record. *Id.*

Here, in light of these conflicting decisions and the Second Circuit's broad interpretation of the ALJ's duty to develop the record, *see, e.g.*, *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits."), this Court concludes that the ALJ did not satisfy his duty to develop the record even though he advised Sotososa's counsel to obtain the missing Lakeshore treatment notes. There is no evidence that the ALJ followed up with Sotososa's counsel or attempted to obtain the missing records himself. The ALJ did not satisfy his duty to develop the record just because he told Sotososa's attorney to obtain the missing records. *See Newsome*, 817 F. Supp. 2d at 137 (E.D.N.Y. 2011); *Harris*, 2013 WL 5278718, at *8; *Glast v. Astrue*, No. 11-CV-5814 SLT, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (finding that the ALJ did not satisfy his duty to develop the record where he asked counsel to obtain additional evidence and left the record open for two weeks); *Curtis v. Astrue*, No. 11-CV-786 (GTS/VEB), 2012 WL 6098258, at *4 (N.D.N.Y. Oct. 30, 2012) (finding that the ALJ did not satisfy his duty to develop the record

even though counsel promised to obtain those records at the administrative hearing). Where, as here, "there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." *Glast*, 2013 WL 5532696, at *10 (citation omitted).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 3, 2016
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court